UNITED STATES DISTRICT Court
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:07-HC-2125-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | **GOVERNMENT'S PROPOSED** |
| | ) | **FINDINGS OF FACT AND CONCLUSIONS** |
| v. | ) | **OF LAW** |
| | ) | |
| STANLEY BURKHARDT, | ) | |
| | ) | |
| Respondent. | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby submits the Government's proposed findings of facts and conclusions of law in the above-captioned matter:

**INTRODUCTION**

The United States seeks to civilly commit Respondent Stanley Burkhardt ("Burkhardt") as a sexually dangerous person under Section 302(4) of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. No. 109-248, Title 111, Section 302(4), 120 STAT. 587, 620(6), codified at 18 U.S.C. § 4247 & 4248. On July 6, 2007, the United States filed a certificate of a sexually dangerous person pursuant to 18 U.S.C. § 4248 against Burkhardt. (D.E. #1; Ex. #1). The procedures established in 18 U.S.C. § 4248(a) were upheld as constitutional in United States v. Comstock, 130 S.Ct. 1949, 1956 (2010)(upholding statute based on

1

Congress' legislative power under the Necessary and Proper Clause to enact federal legislation), and again on remand to the Fourth Circuit of Appeals, in <u>United States v. Comstock</u>, 627 F.3d 513 (4th Cir. 2010)(rejecting Due Process challenges to statute).

The Court may order Burkhardt's civil commitment if the United States proves by clear and convincing evidence that Burkhardt is "sexually dangerous." Under the Adam Walsh Act, a person is sexually dangerous if he has engaged or attempted to engage in sexually violent conduct or child molestation. 18 U.S.C. § 4247(a)(5). In order to find a person is sexually dangerous to others, the Court must find that he suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released. 18 U.S.C. § 4247(a)(6). Therefore, the United States, by clear and convincing evidence must prove that (1) Burkhardt has engaged or attempted to engage in sexually violent conduct or child molestation; (2) Burkhardt suffers from a serious mental illness, abnormality, or disorder; and (3) based on that serious mental illness, abnormality, or disorder, Burkhardt would have serious difficulty refraining from engaging in sexually violent conduct or child molestation.

The Court held a bench trial during its December 5, 2011, term. The Court heard testimony from three forensic psychologists: Dr. Christopher North, Dr. Mary Lela Demby, and Dr. Dianne Lytton.

The Court also heard from Respondent Burkhardt. The expert qualifications of the forensic psychologists went unchallenged. The Court accepted the witnesses as expert witnesses and permitted the witnesses to opine regarding Burkhardt's suitability for commitment under the Adam Walsh Act. In addition, the parties stipulated to numerous exhibits and depositions.

After a review of the evidence, the Court finds that the United States has established by clear and convincing evidence that (a) Burkhardt has engaged or attempted to engage in child molestation, (b) that Burkhardt suffers from at least two serious mental disorders, Pedophilla, Sexually Attracted to boys and girls, non-exclusive type, and Paraphillia Not Otherwise Specified, Hebephillia, and (c) as a result of the serious mental disorders, Burkhardt would have serious difficulty refraining from child molestation if he were to be released. Therefore, Burkhardt meets the criteria for civil commitment under the Adam Walsh act.

### Findings of fact

**A. Procedural History.**

1. On July 6, 2007, the United States filed a certificate of a sexually dangerous person pursuant to 18 U.S.C. § 4248 against Burkhardt. (D.E. #1; Ex. #1). On July 10, 2007, the Honorable Senior United States District Judge W. Earl Britt issued an order appointing the Federal Public Defender to represent Burkhardt. Judge Britt also set a hearing on the merits for April 7, 2008.

(D.E. #2).

2. On September 11, 2007, Burkhardt filed a motion to dismiss this matter. (D.E. #6). Burkhardt's motion to dismiss relied on arguments Burkhardt advanced at a May 7, 2007, hearing and on Judge Britt's findings in his September 7, 2007, order dismissing United States v. Comstock, No. 5:06-HC-2195-BR. On September 20, 2007, Petitioner filed a motion seeking an order staying Petitioner's response time to answer Burkhardt's motion and any decision on the motion to dismiss pending final resolution in Comstock and its companion cases. (D.E. #7).

3. On January 8, 2008, Judge Britt issued an Order granting the motion to stay. (D.E. #12). Following the Supreme Court's ruling in United States v. Comstock, 130 S.Ct. 1949 (2010), Judge Britt issued an order on June 11, 2010, lifting the stay and permitting Burkhardt to seek a hearing on the merits. (D.E. #16).

4. Between June 23, 2010 and November 22, 2011, Burkhardt has filed five motions to dismiss the petition. (D.E. ##17, 63, 65, and 68). On July 21, 2010, Judge Britt issued an Order denying Burkhardt's first motion to dismiss. (D.E. #19). On January 18, 2011, the Court issued an Order denying Burkhardt's second motion to dismiss based on the Fourth Circuit's December 6, 2010, decision in Comstock. (D.E. #23).

5. On January 27, 2011, Burkhardt filed a motion seeking a hearing on the merits of his case. (D.E. #24).

**B.   Personal History, Education, and Physical Condition**

6.   Burkhardt is a 60-year-old divorced man who was born and raised in New Orleans, Louisiana.  (Ex. #16 at 69).   Burkhardt turned 60 in April 2011.  (Ex. #45 at 8-9). Burkhardt has two older brothers and an older sister.  (Ex. #45 at 11).   Burkhardt did not suffer from child abuse or sexual abuse as a child.  (Ex. #45 at 11-12).  Burkhardt is one of four children.  (Ex. #16 at 69). Burkhardt married on November 6, 1981, and the marriage ended in divorce in 1987.  (Id.)

7.   Burkhardt has taken education courses while in federal prison.  (Ex. #4 at 2406).  Burkhardt graduated from Pyrtania Private School in 1969.  (Ex. #16 at 70).  Based on his work as a police officer, Burkhardt has participated in educational programs involving criminology, sociology, and narcotics.  (Id.)

8.   Burkhardt does not suffer any serious medical problems. (Ex. #4 at 2406).  From 1997 to April 1998, Burkhardt was treated for a back ailment.  (Ex. #16 at 69).  Burkhardt has self-reported possible nerve damage to his right thumb as a result of handcuffing during his April 1998 arrest.  (Id.)  During his employment as a police officer, Burkhardt suffered a gun shot wound to his left shoulder.  He has suffered no lingering effects from that injury. (Id.)

5

## C. Employment History.

9. Burkhardt worked as a truck driver from late 1995 to April 1998; a stage hand from late 1994 to late 1995; a data compiler from June 1994 until late 1994, and as a delivery driver from February 1993, to June 1994. (Ex. #16 at 71).

10. Burkhardt was incarcerated from 1987 to 1992. (Id.) Burkhardt worked as a police officer with the New Orleans Police Department from 1972 until 1987 in various units including the Rape, Child Abuse, and Pedophile Units. (Id.) From 1970 to 1972, Burkhardt worked as a communication clerk for the New Orleans Police Department. (Id.)

## D. Mental Health.

11. Burkhardt has not participated in sex offender treatment since the certification of a sexually dangerous person was filed. Burkhardt attended therapy sessions in 1995 at Masters and Johnson Sexual Compulsion Program as part of his prior federal conviction. (Ex. #16 at 69). From March 2, 1993, to April 25, 1995, Burkhardt attended regular therapy sessions with Alicia Barajas, a social worker employed with Family Service of Greater New Orleans. (Ex. #16 at 70). In September 1990, Burkhardt applied for and was accepted into the sex offender treatment program at Federal Correctional Institution at Butner ("FCI-Butner"). (Ex. #33 at 1204). Burkhardt was terminated from the program on February 7, 1992, for Burkhardt's failure to participate in the Behavioral

6

Arousal Group and to follow instructions during the administration of a penile plethysmograph ("PPG"). (Ex. #33 at 1204; Ex. #34).

**E. Criminal History.**

12. Burkhardt is currently in custody at the Maryland Unit in FCI-Butner after he was certified as a sexually dangerous person pursuant to Title 18, United States Code, Section 4248. Burkhardt was certified while serving a prison term imposed after his supervised release was revoked. On July 27, 2006, the Honorable John Beer, United States District Judge, revoked Burkhardt's term of supervised release after finding Burkhardt violated his supervised release by (1) having contact with another sex offender, (2) accessing a computer website to view images of young males, and (3) acquiring an internet mailing address without authorization. (Ex. ##11-12).

13. On April 21, 1999, Burkhardt was sentenced in Federal Court on his guilty plea to one count of Receipt of Material Involving Sexual Exploitation of a Minor and Possession of Material Involving Sexual Exploitation to a 110-month term of imprisonment and five years of supervised release. (Ex. #4 at 2381).

14. On November 8, 1992, Burkhardt was sentenced in Louisana State Court on his plea of guilty to one count of Aggravated Crime Against Nature. He was sentenced to five years imprisonment with credit for time served on his then existing federal conviction. (Ex. #16 at 68).

15. On October 21, 1987, Burkhardt was sentenced in Federal Court on his plea of guilty to five counts of Mailing and Receipt of Material Involving the Sexual Exploitation of Minors and sentenced to five consecutive 10-year terms of imprisonment. (Ex. #16 at 68). On July 20, 1988, the sentencing court issued an order modifying Burkhardt's sentence. (Ex. #23). The sentencing court imposed an amended sentence totaling 10 years imprisonment. (Id.)

**F.    Forensic Evaluation of Dr. Christopher North.**

16. Dr. Christopher North, a licensed forensic psychologist, produced a report dated March 19, 2011. (Ex. #4). Dr. North interviewed Burkhardt on October 5, 2011, and produced an amended report dated October 10, 2011. (Ex. #48). Dr. North noted in his initial report that he found Burkhardt met commitment under the Adam Walsh Act. Dr. North's updated report reaches the same conclusion.

17. Dr. North found that Burkhardt had engaged or attempted to engage in sexually violent conduct or child molestation. (Ex. #4 at 2378). Dr. North cited as support for this finding Burkhardt's 1999 conviction for Receipt of Material Involving Sexual Exploitation of a Minor and Possession of Material Involving Sexual Exploitation, his 1992 conviction for Aggravated Crime Against Nature, and his 1987 conviction for five counts of Mailing and Receipt of Material Involving the Sexual Exploitation of Minors. (Ex. #4 at 2378-2389).

8

18. Dr. North also found that Burkhardt was sexually dangerous to others in that he suffered from two serious mental disorders, Pedophilia, sexually attracted to boys and girls, non exclusive type, and Paraphilia, Not Otherwise Specified. (Ex. #4 at 2406). Dr. North consulted the Diagnostic Manual of Mental Disorders - Fourth Edition - Text Revised ("DSM-IV-TR"), a general guide used by mental health professionals to diagnosis mental disorders. (Id.)

19. According to the DSM-IV-TR, as noted in Dr. North's report, a diagnosis of Pedophilia is warranted where an individual at least 16-years-old exhibits over a six month period recurrent, intense, sexually arousing fantasies, urges, or behaviors that involve sexual activity with a prepubescent child or children, which the DSM-IV-TR defines as 13-years-old or younger. (Ex. #4 at 2407). In support of his diagnosis, Dr. North cites Burkhardt's admissions made during sex offender treatment program that he had a long history of sexual attraction to children which began during Burkhardt's teenage years, his long history of collecting and sending child pornography beginning while Burkhardt was a police officer heading up the Pedophile Unit in 1983-1984, the results of Burkhardt's PPG testing that disclosed Burkhardt had sexual fantasies of children, and the April 2006, seizure of articles related to the North American Man/Boy Love Association ("NAMBLA"), a group comprised of men overtly interested in sexual activity with

9

boys. (Ex. #4 at 2407-2408).

20. Dr. North also diagnosed Burkhardt with Hebephilia, which he described as a "strong sexual attraction to or preference for pubescent boys and girls." (Ex. #4 at 2408). Dr. North cited research indicating that, although the DSM-IV-TR defines prepubescent as generally 13-years-old and younger, current research demonstrates that pubescent children are those between 11 and 14 years-old. (Id.) Dr. North cites Burkhardt's repeated admissions of his sexual attraction to pubescent boys, his possession of NAMBLA material in 2006, and Burkhardt's admission to his probation officer in 2006 that he was searching the internet at the Baton Rouge public library for pictures of teenage boys as evidence of Burkhardt's Hebephilia. (Id.)

21. Dr. North further noted in his report that as a result of Pedophilia and Hebephilia, two serious mental disorders, Burkhardt would have serious difficulty in refraining from engaging in child molestation. (Id.) To assist in determining Burkhardt's risk of reoffending, Dr. North utilized actuarial instruments,[1] the STATIC-99R and STATIC-2002R, both of which have demonstrated moderate predictive accuracy. (Ex. #4 at 2410).

23. The STATIC-99R references 10 risk factors consisting of

---

[1] Dr. North also utilized the Minnesota Sex Offender Screening Tool-Revised ("MnSOST-R") but later declined to use it to determine Burkhardt's risk of reoffending based on a review of MnSOST-R scoring rules. (Ex. #5 at 66-68).

10

demographic and criminal history information to assess broad dimensions that contribute to risk, including (1) an offender's history of sexually criminal conduct, (2) the offender's history of general criminal conduct, (3) the offender's age, (4) unrelated victims, (5) stranger victims, and (6) male victims. (Ex. #4 at 2410-2411). Dr. North assigned two scores to Burkhardt, three or four. (Ex. #4 at 2410). A score of three corresponds to a Low-Moderate risk category, and a score of four corresponds to a Moderate-High risk category. (Id.) Burkhardt's score of three/four also places Burkhardt in the 54th to 81st Percentile of sex offenders. (Ex. #4 at 2413).

24. In order to determine Burkhardt's absolute recidivism risk, Dr. North had to determine whether to compare Burkhardt to the Routine Correctional Sample, Preselected for Treatment Needs Sample, Preselected for High-Risk/High-Needs Sample, or the Non-Routine Correctional Sample as the appropriate sample group to compare Burkhardt. (Ex. #4 at 2413). Dr. North selected the High-Risk/High-Needs Sample based on a number of psychological risk factors. (Ex. #4 at 2417).

25. The STATIC-2002R consists of 14 items used to produce relative risk estimates. (Id.) The items are grouped into five domains: (1) age, (2) persistence of sexual offending, (3) deviant sexual interest, (4) relationship to victim(s), and (5) general criminality. (Id.) As with the STATIC-99R, Dr. North assigned two

11

scores. Burkhardt scored a five or six on the STATIC-2002R, which put him in the Moderate risk category to reoffend relative to other sex offenders. (Ex. #4 at 2420).

26. Dr. North's report concludes in summary that Burkhardt would have serious difficulty in refraining from reoffending based on a deep history of Pedophilia and Hebephilia and supervision violations related to his sexual reoffending. (Ex. #4 at 2421).

**G. Forensic Evaluation of Dr. Mary Lela Demby.**

27. Dr. Mary Lela Demby is a Lieutenant Commander, Senior Scientist Clinical Officer, with the United States Public Health Service assigned to the Bureau of Prisons as a sex offender forensic psychologist. (Ex. #6). Dr. Demby prepared two reports, dated October 18, 2007, (Ex. #8), and an updated report March 11, 2011. (Ex. #7). Dr. Demby's first report was prepared when Burkhardt was 56 years old. (Ex. #8 at 1097). Burkhardt was offered an opportunity to participate in the examination and declined. (Ex. #8 at 1096). Dr. Demby proceeded to diagnosis Burkhardt with Pedophilia, sexually attracted to males and females, non exclusive type, and personality disorders, Narcissistic Personality Disorder and Personality Disorder Not Otherwise Specified with Antisocial Traits. (Ex. #8 at 1105). Like Dr. North, Dr. Demby consulted the DSM-IV-TR. (Id.)

28. Dr. Demby cites Burkhardt's pattern of arousal to children and his sexual abuse of children. (Ex. #8 at 1105).

12

29. According to the DSM-IV-TR, a personality disorder is marked by an enduring pattern of inner experience that deviates from the individual's culture and is readily understood as impacting the individual's cognition, affectivity, interpersonal functioning, or impulse control. (Ex. #8 at 1106). Personality disorders tend to be inflexible and pervasive. (Id.) Narcissistic Personality Disorder is a chronic personality disorder marked by grandiosity and a need for attention. (Id.) Further, Personality Disorder Not Otherwise Specified is marked by a blatant disregard of the rights of others. (Id.)

29. Dr. Demby cites Burkhardt's interaction with others during the course of his sex offender treatment and his repeated misconduct, criminal conduct, and rule violation as supporting the two diagnosis. (Id.) Dr. Demby used STATIC-99, the then current actuarial instrument. Burkhardt scored a six, which corresponded to a High risk category. (Ex. # 8 at 1107).

30. Burkhardt was 59 years old at the time of Dr. Demby's updated report. (Ex. #7 at 2295). Dr. Demby's diagnosis remained unchanged. (Ex. #7 at 2311). Dr. Demby used the STATIC-99R and scored Burkhardt a 5, which places Burkhardt in a Moderate-High risk category. (Ex. #7 at 2315).

31. Dr. Demby also used SVR-20, a checklist includes 20 areas related to sexual reoffense. Dr. Demby found that 8 of the factors were relevant and include Burkhardt's relationship instability,

13

employment problems, violation of probation, escalation of frequency, assaults and threats are exacerbating factors. (Ex. #7 at 2318-2319).

**G.   Forensic Evaluation of Dr. Diane Lytton**.

32.   Dr. Lytton produced a report dated June 10, 2011. (Resp. Ex. #2).   Dr. Lytton found that Burkhardt suffered from Pedophillia, sexually attracted to males and female, non exclusive. (Id.)  Dr. Lytton concluded, however, that Burkhardt's Pedophilia did not render him sexually dangerous because she found no current evidence that he would have serious difficulty in refraining form child molestation.  (Resp. Ex. #2 at 10).  Dr. Lytton also used an actuarial instrument, Multisample Age Stratified Table of Sexual Recidivism Rates ("MATS-1"). (Resp. Ex. #13).  Burkhardt scored a 5 on the MATS-1, which, when measured against the development sample, corresponds to a 6% chance of reoffending.  (Id.)  Dr. Lytton also used the SVR-20 checklist. Based on Burkhardt's score on the SVR-20, Dr. Lytton estimated Burkhardt had a 25% chance of reoffending.  (Resp. Ex. #2 at 14).

<u>CONCLUSIONS OF LAW</u>

**A.   Burkhardt has engaged in or attempted to engage in sexually violent conduct or child molestation.**

33.   The United States has established by clear and convincing evidence that Burkhardt has engaged in or attempted to engage in sexually violent conduct or child molestation based on his prior convictions.  Further, Burkhardt has conceded that he has engaged

14

in or attempted to engage in sexually violent conduct or child molestation. (D.E. #78).

**B.  Burkhardt is sexually dangerous to others.**

34.  First, the United States has established by clear and convincing evidence that Burkhardt suffers from Pedophillia, sexually attracted to boys and girls, a serious mental disorder. Second, the United States has established by clear and convincing evidence that as a result of his serious mental illness, abnormalities and disorders, Burkhardt would have "serious difficulty in refraining from sexually violent conduct or child molestation if released."

35.  The United States must show that Burkhardt's difficulty will be "serious."  The United States, however, need not establish that the person it seeks to commit will, or is likely to, reoffend. See United States v. Hunt, 643 F.Supp.2d 161, 179-81 (D. Mass. 2009).  Instead, the analysis focuses on Burkhardt's volitional control understood in relation to his mental illness. See United States v. Carta, 2011 WL 2680734, slip op., at 22.  This determination requires more than relying on recidivism rates of past offenders, but an analysis of a range of different factors, including Burkhardt's history before incarceration, his time in prison, and the opinion of experts. (Id.)

36.  The determination of this prong of the analysis is informed by the constitutional constraints on the civil commitment

15

scheme. Carta, at *23. In Kansas V. Crane, 534 U.S. 411 (2002), the Supreme Court held that in order to civilly commit someone for sexual dangerousness "there must be proof of serious difficulty in controlling behavior." (Id. at 413). This standard allows courts wide discretion in considering a number of factors that are relevant to sexual dangerousness. Carta, *23. The standard does not have "any kind of narrow or technical meaning; nor was it demonstrable with a mathematical precision." Crane, 534 U.S. at 413.

37. The final analysis must not be just whether Burkhardt exhibits traits shared by recidivists. Carta, at *23. Rather, Burkhardt's volitional control must be "viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself. . . [in such a way that] distinguish[es] [him] from the dangerous but typical recidivist convicted in an ordinary criminal case." (Id.)

38. As an initial matter, the Court assigns greater credit to the reports of Drs. North and Demby because their reports and testimony was more credible in light of reason and the Court's experience than Dr. Lytton's report. Both Drs. North's and Demby's reports note Burkhardt's repeated violations while under court supervision demonstrates that he will be sexually dangerous. Dr. Lytton's report does not sufficiently weigh this factor and instead relies too heavily on statistical estimates to assess Burkhardt's

16

risk of reoffense.

## CONCLUSION

39. Because the United States has established by clear and convincing evidence that Burkhardt is a sexually dangerous person under 18 U.S.C. § 4247(a)(5), Burkhardt should be committed to the custody of the Attorney General until he is no longer a sexually dangerous person under the Adam Walsh Act.

Respectfully submitted on this the 7th day of December 2011.

        THOMAS G. WALKER
        United States Attorney

        BY: /s/ Michael G. James
            MICHAEL G. JAMES
        Assistant United States Attorney
        Civil Division
        310 New Bern Avenue, Suite 800
        Raleigh, North Carolina 27601
        Phone: (919) 856-4530
        Facsimile: (919) 856-4821
        NY Bar No. 2481414
        E-mail: Mike.James@usdoj.gov

CERTIFICATE OF SERVICE

    This is to certify that I have this 7th day of December 2011, served a copy of the Government's proposed findings of facts and conclusions of law by CM/ECF to the respondent addressed to:

Ms. Suzanne Little
Assistant Federal Public Defender
Attorney for respondent
Office of the Federal Public Defender
150 Fayetteville St., Suite 450
Raleigh, NC 27601

                          /s/ Michael G. James
                          MICHAEL G. JAMES
                          Assistant United States Attorney
                          Civil Division
                          310 New Bern Avenue, Suite 800
                          Raleigh, North Carolina 27601
                          Phone: (919) 856-4530
                          Facsimile: (919) 856-4821
                          NY Bar No. 2481414
                          E-mail: Mike.James@usdoj.gov